## HAZLE M. CHAPMAN v. BLANCHE DAVIS.[1]

January 26, 1951.

No. 35,176.

---

[1]Reported in 45 N. W. (2d) 822.

*Walter U. Hauser* and *J. Stewart McClendon,* for appellant.
*Kelly, Mangan & Kelly,* for respondent.

MATSON, JUSTICE.

An appeal by plaintiff from an order quashing and vacating the service of the summons and dismissing the action for lack of jurisdiction.

Plaintiff brought this action to recover damages for personal injuries arising out of defendant's alleged negligent manipulation of a defective wheel jack while changing tires. The accident causing plaintiff's injuries occurred on July 18, 1943. This action was commenced against defendant on July 14, 1949, by serving the summons and complaint upon the commissioner of highways of the state of Minnesota and by mailing a notice of such service and a copy of the summons and complaint to defendant at her

64

last known address—Omak, Washington—pursuant to M. S. A. (1949) 170.55.

Defendant appeared specially and moved to quash the service of the summons and dismiss the action for lack of jurisdiction. By affidavit, defendant stated that she had been employed as a teacher at Coleraine, Minnesota, where she "resided" during the school year, and that during the summer of 1943 and at the time of the accident she was employed in Minneapolis, where she was then "temporarily living." Plaintiff, by affidavit of one of her attorneys, stated on information and belief that defendant was not a resident of Minnesota during the month of July 1943, but was a resident of Missouri, temporarily living in Coleraine, Minnesota, during the school term and returning each summer to her home in Fairfax, Missouri. The trial court quashed the service of the summons and dismissed the action for lack of jurisdiction. Plaintiff appealed from the order quashing service of the summons and dismissing her action.

Issues arise as to:

(1) Whether the 1949 amendment (L. 1949, c. 582, § 1) of § 170.55 of the safety responsibility act (§§ 170.21 to 170.58), which was first enacted in 1945 (L. 1945, c. 285), may be applied retroactively to a cause of action which arose in 1943.

(2) Whether the term *nonresident* as used in Minn. St. 1941, § 170.05, is based upon a concept of residence as (a) a legal domicile, (b) an actual residence, or (c) a temporary abode.

Section 170.56 (1945) of the present safety responsibility act as originally enacted specifically provides:

"This chapter shall not apply with respect to any accident, * * * or violation of the motor vehicle laws, of this state, * * * *occurring prior to the effective date* of Laws 1945, Chapter 285." (Italics supplied.)

The question arises, however, whether the 1949 amendment (L. 1949, c. 582, § 1) of § 170.55 (1945) is to be construed as retroactive in its application to accidents arising in 1943. If no retroac-

tive application was thereby effected, then the validity of service of the summons will be governed by § 170.05 (1941). Clearly, the 1949 amendment has no retroactive application. In the first place, the amending act, namely, L. 1949, c. 582, § 1, is wholly silent as to retroactive application. In the second place, where the legislature enacts an amendatory act without expressing therein any intent that it shall be applied retroactively, the construction of such act is governed by § 645.31, which specifically provides:

"When a section or part of a law is amended, the amendment shall be construed as merging into the original law, becoming a part thereof, and replacing the part amended, and the remainder of the original enactment and the amendment shall be read together and *viewed as one act passed at one time;* but the portions of the law which were not altered by the amendment shall be construed as effective from the time of their first enactment, and *the new provisions shall be construed as effective only from the date when the amendment became effective."* (Italics supplied.)

All hope for retroactive application is further dispelled by § 645.21, which provides that "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature."[2] This section is but expressive of the principle that the courts will presume that a statutory enactment applies to the future and not to the past. George Benz Sons, Inc. v. Schenley Distillers Corp. 227 Minn. 249, 35 N. W. (2d) 436. Furthermore, § 645.21 applies to all laws without making any distinction between laws relating to procedure and those pertaining to substantive rights. See, Ogren v. City of Duluth, 219 Minn. 555, 18 N. W. (2d) 535.

[2]Cases cited by appellant are not in point: Ogren v. City of Duluth, 219 Minn. 555, 18 N. W. (2d) 535 (court gave retroactive effect to the statute only where such necessary legislative intent was manifest); Tompkins v. Forrestal, 54 Minn. 119, 55 N. W. 813 (M. S. A. 645.21 was not then enacted).

Since § 170.55, as amended by L. 1949, c. 582, § 1, has no retroactive application, we turn to a construction of the only pertinent statute applicable to a cause of action arising in 1943, namely, § 170.05 (1941), which provides:

"The use and operation by a *non-resident,* or his agent, of a motor vehicle upon and over the highways of the state shall be deemed an appointment by such *non-resident* of the commissioner to be his true and lawful attorney, upon whom may be served all legal processes in any action or proceeding against him growing out of such use or operation of a motor vehicle over the highways of this state resulting in damages or loss to person or property, and this use or operation shall be a signification of his agreement that any such process in any action against him which is so served shall be of the same legal force and validity as if served upon him personally." (Italics supplied.)

When is a person a "nonresident" within the meaning of the above section? In the absence of a statutory definition,[3] "residence" expresses different concepts according to the context in which it is used, namely: (1) A legal domicile, (2) an actual residence, or (3) a temporary abode.[4] In determining which concept was intended by the legislature in enacting § 170.05 (1941), the purpose of the act must be considered. When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters, the mischief to be remedied, the object to be attained, and the consequences of a particular interpretation. M. S. A. 645.16(3, 4, 6). What was the object of allowing constructive service upon nonresident motor-

---

[3]Cases have arisen under other statutes and have defined residence as being synonymous with domicile: N. W. Mortgage & Security Co. v. Noel Const. Co. 71 N. D. 256, 300 N. W. 28 (motorist statute); City of Enderlin v. Pontiac Township, 62 N. D. 105, 242 N. W. 117 (poor relief).

[4]Vol. 1942, Wis. L. Rev. 439, 440; Beale, *Residence and Domicil,* 4 Iowa L. Bull. 3, 4 (1918).

ists?[5] The statute in question obviously aims at relieving local citizens from the inconvenience of resorting to other jurisdictions for relief for injuries resulting from the operation of automobiles by nonresidents.[6] Public policy demands that the motorist be held responsible locally.[7] In Zavis v. Warren (D. C.) 35 F. Supp. 689, 690, the court stated:

"The law in question was enacted for the protection of the person who might be injured, rather than to provide any convenience for the nonresident user of the highways * * *."[8]

The general rule is that statutes providing for a substituted or constructive service of process should be strictly construed,[9] but this rule must not be used to defeat the purpose of the statute.[10] The statute should be interpreted so as to subject all users of the highways to the process of local courts, thereby effectuating the legislative purpose.[11]

Under our general statute setting forth the manner of service of summons on natural persons, a summons can only be served upon defendant in person or by leaving a copy "at the house of the usual abode of the person to be served, with some person of

---

[5]State ex rel. Selover v. Probate Court, 130 Minn. 269, 153 N. W. 520; Bechtel v. Bechtel, 101 Minn. 511, 112 N. W. 883, 12 L. R. A. (N. S.) 1100. This rule is followed in other jurisdictions: Russell v. Holland, 309 Mass. 187, 34 N. E. (2d) 668; In re Takahashi's Estate, 113 Mont. 490, 129 P. (2d) 217; In re Jones' Case, 341 Pa. 329, 19 A. (2d) 280; In re Estate of Schultz, 316 Ill. App. 540, 45 N. E. (2d) 577; Restatement, Conflict of Laws, § 9, *comment e.*

[6]48 W. Va. L. Q. 183, 184 (1942) ; see, Culp, *Process in Actions Against Non-Resident Motorists*, 32 Mich. L. Rev. 325, 350 (1934) ; see, also, Notes, 12 Ind. L. J. 73, 76 (1936).

[7]Notes, 12 Ind. L. J. 73, 76 (1936); Vol. 1942, Wis. L. Rev. 439, 441.

[8]Wis. St. 1939, § 85.05(3).

[9]Notes, 12 Ind. L. J. 73, 76 (1936).

[10]Vol. 1942, Wis. L. Rev. 439, 441.

[11]Vol. 1942, Wis. L. Rev. 439, 441; see, Culp, *Process in Actions Against Non-Resident Motorists*, 32 Mich. L. Rev. 325, 327 (1933) ; see, also, Notes, 12 Ind. L. J. 73, 76 (1936).

suitable age and discretion then residing therein."[12] As a result, if a motorist is permanently or continuously absent from the state without a place of abode in it, no jurisdiction could ever be obtained in an action against him except by constructive service. Hence, if the first concept of residence, namely, legal domicile, is adopted and no one is to be deemed a nonresident under § 170.05 (1941) whose domicile is in the state, the purpose of the statute would be to a great extent defeated. For example, a motorist could leave this state with the intent of being absent for business or pleasure for a number of years but with the intent of returning; as a result, his domicile would still be in this state, although he no longer maintained a place of abode in it. A man may have a residence in one state and his domicile in another.[13] During his absence, jurisdiction of the person could not be obtained by service of a summons; and, unless jurisdiction of the person could be obtained by constructive service under § 170.05 (1941), a local citizen would be powerless to collect damages in the local courts against a motorist living in a foreign state and domiciled in the state where the accident occurred. Clearly, to interpret residence to mean domicile would defeat the purpose of § 170.05 (1941)—to subject all users of the highways to the process of local courts; and therefore the concept of domicile should not be adopted.

Neither should the third concept of residence, a temporary abode, be adopted in construing § 170.05 (1941). For example, suppose that a motorist while vacationing at a lake cabin for a few weeks has an accident in which a local citizen is injured. Under the third concept, the motorist would be a resident at the time of the accident; and he could subsequently abandon his residence before jurisdiction could be acquired and thereafter remain outside the state. As long as the motorist remained outside the state, jurisdiction of the person could not be obtained. Thus,

---

[12]Minn. St. 1941, § 543.05.
[13]Keller v. Carr, 40 Minn. 428, 42 N. W. 292.

the injured party would be forced to seek recovery of his damages by action in a foreign jurisdiction, and the purpose of the statute would again be defeated.

If we are to effectuate the purpose of § 170.05 (1941),[14] the second concept—*an actual residence*—must be adopted as the definition of *residence*.[15] Applying this concept of actual residence, if a person legally domiciled in one state has an actual residence in another state, he may be served as a nonresident in a suit arising out of the operation of his car in the state of his domicile. On the other hand, if the person actually resides within the state when and where the accident occurs, he is not subject to constructive service of process even though his domicile is elsewhere. While actual residence has a less permanent connotation than domicile, it is not a mere temporary abode. A temporary absence from the usual place of abode does not terminate an actual residence.[16] Thus, if a person is living in a state for a limited time without any intention of making it his home and, while in that state, injures a person through the operation or use of an automobile, he could be served under § 170.05 (1941) as a nonresident.

In construing "residence"—for the purpose of constructive service of process—to mean *actual residence,* and not as a legal domicile or temporary abode, we are but following a prior construction of this court in an analogous situation. In the Keller case,

---

[14]The constitutionality of such statutes is based upon the theory that constructive service against nonresidents is a proper exercise of the police power, because it is necessary to have a speedy adjudication of the rights of the parties. 26 Chi-Kent Rev. 159, 160 (1948); see, Pawloski v. Hess, 253 Mass. 478, 149 N. E. 122 (1925), affirmed, 274 U. S. 352, 47 S. Ct. 632, 71 L. ed. 1091.

[15]Cf. Keller v. Carr, 40 Minn. 428, 42 N. W. 292.

[16]Keller v. Carr, 40 Minn. 428, 42 N. W. 292 (attachment set aside where defendant was absent from state for about four months and had no house of usual abode within state where summons might be served); Lawson v. Adlard, 46 Minn. 243, 48 N. W. 1019; Vol. 1942, Wis. L. Rev. 439, 442.

in construing the meaning of a "non-resident debtor," we said (40 Minn. 431, 42 N. W. 293):

"* * * the great weight of authorities hold—rightly so, as we think—that a debtor, although his legal domicile is in the state, may reside or remain out of it for so long a time, and under such circumstances, as to acquire, so to speak, an *actual non-residence*, within the meaning of the attachment statute." (Italics supplied.)

It should be noted that for substituted service most writers agree that, in the absence of a statutory provision to the contrary, residence means actual residence—not necessarily domicile.[17] The concept of *actual residence* as applied to § 170.05 (1941) not only imposes no serious inconvenience or unreasonable hardship upon a resident motorist who is only temporarily absent from the state of his residence, but also protects the injured party who might otherwise be substantially deprived of a legal remedy by ordinary process. Therefore, in view of the purpose of the statute, a person must be deemed a nonresident within the meaning of § 170.05 (1941) when he has no *actual residence*—as distinguished from the concepts of legal domicile and temporary abode—within the state.

In construing residence to mean *actual residence*,[18] a question of fact arises: Whether the defendant's stay within the state was an actual residence under § 170.05 (1941). There is no exact legal test by which to determine the question of residence and nonresidence; the question must be determined by the ordinary and obvious indicia of residence—nature, purpose, and duration of the stay. However, the fact of actual residence is not so diffi-

---

[17]Kennan, Residence and Domicile, §§ 210, 231 (1934); Vol. 1942, Wis. L. Rev. 439; but, see, Waples, Attachment and Garnishment (2 ed.) § 46.

[18]Briggs v. Superior Court, 81 Cal. App. (2d) 240, 183 P. (2d) 758; Suit v. Shailer (D. C.) 18 F. Supp. 568. For cases involving this problem, see Annotations, 82 A. L. R. 768; 96 A. L. R. 594; 125 A. L. R. 457; 138 A. L. R. 1464.

cult to prove as the existence of a subjective intent to return, upon which the question of domicile sometimes depends.

In the instant case, there is a paucity of facts concerning the residence of defendant at the time of the alleged accident to guide us in our determination of this fact question. The only evidence in support of plaintiff's contention that defendant was a nonresident at the time of the alleged accident is an affidavit of J. Stewart McClendon, one of plaintiff's attorneys, who stated on information and belief that defendant was not a resident of Minnesota during the month of July 1943, but a resident of Missouri, temporarily living in Coleraine, Minnesota, during the school term and returning each summer to her home in Fairfax, Missouri. On the other hand, defendant by an affidavit stated that she had been employed as a teacher at Coleraine, Minnesota, where she "resided" during the school year, and that during the summer of 1943 and at the time of the accident she was temporarily living in Minneapolis while employed at Powers Department Store. The question of residence under § 170.05 (1941) does not involve the determination of residence in a county or a school district, but only the determination of residence *within the state* of Minnesota itself, and the fact that defendant moved from place to place within the state is irrelevant. An important fact is that defendant's purpose for staying in Minnesota was to make a living—teaching during the school term and working in a department store during the summer months. Defendant further stated in her affidavit that on June 4, *1944,* she left Minnesota and went to Missouri, where she cared for her ill mother. She never again returned to Minnesota. The mischief which was intended to be remedied by § 170.05 (1941) was the difficulty of effecting service of summons in the usual way within the state on nonresident motorists who were only temporarily within the state. But no such condition existed in this case, where defendant was actually residing within the state for almost a year after the alleged accident. The accident occurred on July 18, 1943, and defendant did

not leave Minnesota for Missouri until June 4, 1944. Upon the evidence presented by the affidavits, the trial court properly held that defendant was a resident of the state of Minnesota at the time of plaintiff's injury within the contemplation of § 170.05 (1941)

The order of the trial court is affirmed.

Affirmed.

[1]Reported in 45 N. W. (2d) 802.