THOMAS HINTON v. CARL L. PETER AND OTHERS.
JOHN H. HINTON v. SAME.
RICHARD OLSON v. SAME.
HAROLD OLSON v. SAME.
ESTHER A. WILSON AND ANOTHER, RESPONDENTS.[1]

November 7, 1952.

Nos. 35,544, 35,545, 35,546, 35,547.

[1]Reported in 55 N. W. (2d) 442.

*Frisch, Schway & Gelb,* for appellants.
*Thomas J. Spence* and *Kenneth W. Green,* for respondents.

THOMAS GALLAGHER, JUSTICE.

These actions arose out of an automobile accident which occurred in St. Paul on November 30, 1948. They were commenced against defendants Esther A. Wilson and Donald Wilson on September 26, 1950, by service of process upon the commissioner of highways of the state of Minnesota pursuant to M. S. A. 170.55.[2] This section provides for service of process upon the commissioner of highways in actions against nonresidents for damages to persons or property growing out of their operation of motor vehicles on the state's highways.[3]

---

[2] M. S. A. 170.55 provides:

"The use and operation by a * * * non-resident * * * of a motor vehicle upon and over the highways of the state of Minnesota, shall be deemed an appointment by such * * * non-resident * * * of the commissioner of highways to be his true and lawful attorney upon whom may be served all legal process in any action or proceeding against him growing out of such use or operation of a motor vehicle over the highways of this state, resulting in damages or loss to person or property, * * *."

[3] Section 170.55 was amended by L. 1949, c. 582, § 1, so as to provide for service of process in a like manner against resident motorists who, subsequent to an accident, abandon residence here before jurisdiction is acquired and thereafter remain outside the state for six months or more. In Hughes v. Lucker, 233 Minn. 207, 46 N. W. (2d) 497, and Chapman v. Davis, 233 Minn. 62, 45 N. W. (2d) 822, the amendment was held to have no retroactive effect. It has no application here.

Subsequent to such service Esther A. Wilson and Donald Wilson appeared specially and, upon affidavits, moved to vacate the described service on the ground that they were actual residents of this state on November 30, 1948, and, hence, not subject to the provisions of § 170.55. On January 17, 1951, the trial court vacated the service. Subsequently it reopened the case to receive additional evidence on the issue but on August 17, 1951, reaffirmed its prior order by again vacating and setting aside the service. This appeal is from the latter order.

The facts, which are not in dispute, establish that defendant Esther A. Wilson is the wife of defendant Quintus C. Wilson and that Donald Wilson is their son; that prior to the date of the accident the Wilsons had resided in St. Paul for approximately 20 years; that on September 4, 1948, Quintus C. Wilson left Minnesota and moved to Salt Lake City, Utah, where he established his permanent residence; that in October 1948 Esther A. Wilson, who had continued to live in St. Paul, visited her husband in Utah and, while there, purchased a home, thereafter returning to her residence in St. Paul; that it was then her intention to leave St. Paul and join her husband in Salt Lake City in June 1949 when her son would have completed his school year in St Paul; that late in October 1948 or the first part of November she sold the family residence in St. Paul but, with the permission of the new owners, continued to reside there with Donald until about January 6, 1949; that she voted in the general election in St. Paul in November 1948; that the automobile involved in the accident was purchased by her in St. Paul and belonged to her at the time of the accident; that on January 6, 1949, after ascertaining that a satisfactory school transfer to Salt Lake City could be made for Donald, she and Donald left St. Paul permanently to join her husband in Salt Lake City; and that the present actions were not commenced until some 20 months later by service of process as above described.

Appellants contend that defendants Esther A. Wilson and Donald Wilson were nonresidents of the state on November 30, 1948, because prior thereto they had formed the intention of leaving it for

Utah and taken certain steps in preparation therefor; and that on that date, their presence here being merely temporary, they were nonresidents within the meaning of § 170.55.

It is well established that the question of residence or nonresidence is primarily one of fact. Murtha v. Olson, 221 Minn. 240, 21 N. W. (2d) 607; Missouri, Kansas & Texas Trust Co. v. Norris, 61 Minn. 256, 63 N. W. 634; Bausman v. Tilley, 46 Minn. 66, 48 N. W. 459; Lee v. Macfee, 45 Minn. 33, 47 N. W. 309.

Here the trial court's determination of this issue finds ample support in the evidence. The record establishes, without challenge, that the Wilsons for many years prior to the date of the accident were actual residents of St. Paul; that they owned property, maintained their home, and voted in elections there; that Esther A. Wilson manifested her continued residence by voting at the general election there in 1948, and Donald his, by continuance in school.

In Chapman v. Davis, 233 Minn. 62, 45 N. W. (2d) 822, we held that the concept of residence under Minn. St. 1941, § 170.05 (which was similar to and superseded by § 170.55), was not intended to be synonymous with *legal domicile* or *temporary abode* and that if *actual residence* within the state at the time of an accident on the highways were established the provision of the statute relative to service upon nonresidents would be inapplicable. There we stated (233 Minn. 70, 45 N. W. [2d] 827):

"* * * the question must be determined by the ordinary and obvious indicia of residence—nature, purpose, and duration of the stay."

These principles were reiterated in Hughes v. Lucker, 233 Minn. 207, 210, 46 N. W. (2d) 497, 499. There, construing the provisions of § 170.55, we stated:

"* * * In order not to be classified as an *actual nonresident,* a person * * * need not acquire a domiciliary residence in the state, but his stay * * * must be of such nature and purpose, coupled with an intention to remain long enough, that his presence in the state cannot be classified as merely temporary. * * * The element

of permanency which goes with the establishment of an actual residence is not to be arbitrarily measured by any mere yardstick of time but rather by the actor's intent as reflected by the nature and purpose of his acts and conduct."

Keeping these principles in mind, it is clear that defendants here challenging the applicability of § 170.55 cannot be classified as nonresidents as of the date of the accident. The element of permanency which went with the establishment of their original residence here is demonstrated beyond question by the 20-year period of time during which Minnesota was made their home. While prior to November 1948 they had formed the intention of terminating this permanent residency, this intention in itself would not bring about such an effect. It could easily have been altered later, and not until it was accompanied by actual removal from the state would it be reasonable to hold, as a matter of fact, that their residency had terminated and their status changed to that of nonresidents. The order of the trial court must be affirmed.

Affirmed.